IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

LESLIE K. JOHNSON,

        Petitioner,

v.

DAVID LOUTHAN, Warden,

        Respondent,

Case No. 22-CV-218-RAW-DES

## OPINION AND ORDER

Petitioner Leslie K. Johnson ("Johnson"), an Oklahoma prisoner appearing pro se, brings this action pursuant to 28 U.S.C. § 2254, seeking federal habeas relief from the judgment entered against him in the District Court of LeFlore County, Case No. CF-2016-312. Dkt. 1. Johnson raises five grounds for habeas relief. *See id.* The court considered Johnson's Petition for Writ of Habeas Corpus ("Petition") (Dkt. 1), Respondent's Response in Opposition to Petition for Writ of Habeas Corpus (Dkt. 19), Johnson's Reply (Dkt. 23), Respondent's Supplemental Brief (Dkt. 28), Johnson's Objection (Dkt. 31), the record of state-court proceedings provided by Respondent (Dkts. 19-1 through 19-42 and Dkt. 20), and applicable law. For the reasons discussed below, the Petition is DENIED.

## BACKGROUND

On June 6, 2017, a LeFlore County jury found Johnson guilty of one count of Child Sexual Abuse. Dkt. 19-2, Dkt. 20-9 at 23.[1] On September 26, 2017, the trial court sentenced Johnson to twenty-five years imprisonment. Dkt. 19-3. The victim, H.J., was Johnson's then sixteen-year-old daughter.

---

[1] Unless otherwise noted, the Court's citations refer to the CM/ECF pagination.

H.J. testified she did not have a relationship with her father before she was fifteen. Dkt. 20-6 at 17. Around the age of fifteen, H.J. began living with her grandfather, Raymond, and would spend the weekends at Johnson's home in Whitesboro, Oklahoma where Johnson lived with his wife, Elizabeth. *Id.* at 17-18. On Father's Day weekend of 2016, H.J. spent the weekend with Johnson and Elizabeth. *Id.* at 18. The Sunday of Father's Day weekend, June 19, 2016, H.J. went to church with Johnson and Elizabeth, and H.J. testified they all had a "really great day." *Id.* at 19. H.J. went to sleep that night in her room at Johnson's house, Johnson slept on the couch and Elizabeth slept in her and Johnson's bedroom. *Id.* at 19-20.

H.J. testified she woke up the morning of June 20, 2016, and Johnson was laying next to her with his arm wrapped around her. Dkt. 20-6 at 20. When she woke up, she was laying on her right side "[a]nd before I knew what happened, he took his left hand and pushed my hip down onto the bed and started yanking down my shorts." *Id.* H.J. was facedown and Johnson was on top of her. *Id.* at 21. Johnson proceeded to stick his finger into H.J.'s vagina and then he stuck his penis inside her vagina. *Id.* After "he was done" H.J. rolled over on her back and watched Johnson "holding himself and running, I guess, to the bathroom." *Id.* H.J. testified she was wearing a tank top, shorts and purple panties. *Id.* at 20, 37.

H.J. disclosed the incident to Raymond, her grandfather, that day. Dkt. 20-6 at 25. Raymond first confronted Johnson at an E-Z Mart the following morning, Tuesday, June 21, 2016. *Id.* at 4. Raymond also arranged a meeting between himself, H.J. and Johnson at his home the evening of June 21, 2016. *Id.* at 5. Raymond testified that during the E-Z Mart conversation, "I asked him if he raped H.J. and he said no, but they did have sex." *Id.* at 4. Regarding the evening conversation between Raymond, H.J. and Johnson, Raymond was asked, "[t]hroughout the course of that discussion, did [Johnson] continue to confirm that he had had intercourse, but not rape, with

2

H.J.?" *Id.* at 5.  Raymond responded, "yes." *Id.*  Raymond also asked Johnson "to turn himself in and take care of this so that H.J. wouldn't have to." *Id.* at 6.  H.J. testified during the conversation Johnson apologized "millions of times" and said to her, "don't send me to prison." *Id.* at 26.

Johnson testified in his own defense. Dkt. 20-7 at 35.  Johnson testified he went into H.J.'s bedroom the morning of June 20, 2016, to wake her up, and she asked to sleep for a few more minutes. *Id.* at 41.  Therefore, Johnson "crawled in behind her and I put my arm up under her head and I remember rubbing her hair and went to sleep." *Id.*  He testified the next thing he remembers is having an erotic dream and "when I came to, I was on top of my daughter . . . I was sitting up and she was facedown and I had my basketball shorts on.  They were not off.  My clothes was on." *Id.* at 42.  Johnson testified, "I really don't know what happened.  I wish to God I did, but I don't." Dkt. No. 20-8 at 3.  When asked if he had an explanation for the DNA evidence, discussed below, Johnson responded, "[n]o, I don't besides maybe something did happen." *Id.* at 5.  On cross-examination, Johnson admitted he was on top of his daughter, she was face down and he was erect. Dkt. No. 20-8 at 7.

Authorities with the Oklahoma Department of Human Services ("DHS") were ultimately notified of the allegations, and DHS arranged to forensically interview H.J. and to conduct a sexual assault nurse examination.  Dkt. 20-5 at 11, 16-17.  H.J. was forensically interviewed, and a sexual assault examination occurred on June 24, 2016.  Dkt. 20-5 at 25, 32-33.  Through the forensic interview, authorities learned what H.J. was wearing the morning of June 20, 2016, and that those items were in luggage at her great-grandmother's, Thelma, home.  Dkt. 20-4 at 28.  Authorities were provided consent to seize the luggage and retrieved "a tank top shirt and two-pair of panties, underpants, of the child." *Id.* at 30.  Also, a buccal swab was obtained from H.J. for purposes of DNA analysis, as well as a buccal swab from Johnson.  Dkt. 20-4 at 35 and Dkt. 20-5 at 36.

3

William Christensen ("Christensen") with the Oklahoma State Bureau of Investigation performed serology analysis and DNA analysis using the items (tank top and two pairs of underwear) and DNA collected.  Dkt. 20-7 at 9.  Christensen performed the serology analysis, which is the identification of bodily fluids, on each item of clothing and detected seminal fluid on one pair of underwear.  *Id.* at 10.  As a result, DNA analysis was performed on the pair of underwear with seminal fluid.  *Id.* at 11.  Regarding his DNA analysis, Christensen testified:

> The DNA profile obtained from the cutting of the purple underwear, the epithelial fraction part, matches the DNA profiled obtained from H.J. and the probability of selecting an unrelated individual at random from the population having this DNA profile is at least one in 883 quadrillion.

*Id.* at 13-14.  He further testified:

> For the sperm fraction, the DNA profile obtained from the cutting of the purple underwear from the sperm fraction is a mixture of at least two individuals, or two people.  The source of the known buccal swabs from Leslie Kevin Johnson and known buccal swabs from H.J. could not be excluded as a potential contributor to this mixture.  The probability of selecting an unrelated individual at random from the population who could be a contributor to this mixture is at least 1 and 12.1 billion.

*Id.* at 14.  The following exchange occurred between Christensen and the state prosecutor:

> Q:  And when you are examining this mixture and this sperm fraction, did you find some that were unique to [Johnson]?
> A:  Yes, I did.
> Q:  Did you also find some that were unique to H.J.?
> A:  Yes.
> Q:  Did you find some that they shared?
> A:  Yes, I did.
> Q:  Did you find anything that appeared to belong to a third party?
> A:  No, I did not.

*Id.* at 15.

As noted above, Johnson was convicted of child sexual abuse and sentenced to twenty-five years imprisonment.  Dkt. 19-3.

## DISCUSSION

### I.  Legal standards

A federal court has discretion to grant federal habeas relief to a prisoner who is in state custody pursuant to a final criminal judgment if the prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *see Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts."). But the federal habeas statutes, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and as interpreted by the United States Supreme Court, significantly limit a federal court's discretion to grant habeas relief to a state prisoner.

### A.  Exhausted claims

"A state prisoner generally must exhaust available state-court remedies before a federal court can consider a habeas corpus petition." *Bland v. Sirmons,* 459 F.3d 999, 1011 (10th Cir. 2006); *see* 28 U.S.C. § 2254(b)(1)(A). When a state prisoner fairly presents a federal claim in state court and the state court adjudicates that claim on the merits, a federal court cannot grant habeas relief as to that claim unless the prisoner first shows that the state court's decision as to that claim either (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Douglas v. Workman*, 560 F.3d 1156, 1170 (10th Cir. 2009) (quoting 28 U.S.C. § 2254(d)(1)-(2)).

As used in § 2254(d)(1), the phrase "clearly established Federal law" means "the governing legal principle or principles" stated by "the holdings" of the Supreme Court's "decisions as of the

time of the relevant state-court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). Thus, when § 2254(d)(1)'s framework informs a federal court's analysis, the first question for the court is whether the petitioner's claim rests on law that was clearly established by Supreme Court precedent at the time of the relevant state-court decision. *House v. Hatch*, 527 F.3d 1010, 1015-18 (10th Cir. 2008). If such law exists, and the state court has correctly identified that law, the only question under § 2254(d)(1) is "whether the decision 'unreasonably applies that principle to the facts of the prisoner's case.'" *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) (quoting *Williams*, 529 U.S. at 413). To establish that the state court's decision unreasonably applied the law, a petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). In other words, "a petitioner must persuade a federal court that no 'fairminded juris[t]' could reach the state court's conclusion under [the Supreme] Court's precedents." *Brown v. Davenport*, 596 U.S. 118, 135 (2022) (quoting *Davis v. Ayala*, 576 U.S. 257, 269 (2015)).

Under § 2254(d)(2), a petitioner must show that the state court's decision rests on an unreasonable determination of the facts. But "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). Instead, the reasonableness of a state court's factual determination also is measured by *Richter*'s fairminded-disagreement standard. *Dunn v. Madison*, 583 U.S. 10, 13-14 (2017). And "if [*Richter's*] rule means anything, it is that a federal court must carefully consider all the reasons and evidence supporting the state court's decision" and that the federal court may not disturb the state court's decision "without

identifying—let alone rebutting—all of the justifications" that may support that decision. *Mays v. Hines*, 592 U.S. 385, 391-92 (2021) (per curiam). In addition, when § 2254(d) applies, the federal court's review is limited to the same record that was presented in state court unless and until the petitioner satisfies § 2254(d)'s demanding preconditions to relief, *Pinholster*, 563 U.S. at 185, and the federal court must presume the correctness of any state-court factual findings unless the petitioner presents clear and convincing evidence to rebut that presumption, 28 U.S.C. § 2254(e)(1).

If the state court denies the federal claim based on an independent and adequate state procedural rule, the prisoner has procedurally defaulted that claim for purposes of federal habeas review. *Davila*, 582 U.S. at 527; *Coleman v. Thompson*, 501 U.S. 722, 732 (1991), *modified on other grounds by Martinez v. Ryan*, 566 U.S. 1 (2012). A federal court may not review, much less grant relief on, a procedurally defaulted claim unless the prisoner first shows either cause for the procedural default and actual prejudice from the alleged constitutional error or that the federal court's failure to review the claim will result in a fundamental miscarriage of justice. *Davila*, 582 U.S. at 527; *Coleman*, 501 U.S. at 750; *see also McQuiggin v. Perkins*, 569 U.S. 383, 392-93 (2013) (discussing miscarriage of justice exception); *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (discussing cause and prejudice).

If a petitioner satisfies § 2254(d)'s preconditions to relief, the federal court may then review the petitioner's federal claim *de novo*. *Milton v. Miller*, 744 F.3d 660, 670-71 (10th Cir. 2014). But, even on *de novo* review, a federal court must apply § 2254(e)(1)'s presumption of correctness to any state-court factual findings relevant to the federal claim. *Sumpter v. Kansas*, 61 F.4th 729, 750 (10th Cir. 2023). Moreover, even if the federal court determines that a constitutional error occurred, the court may not grant federal habeas relief unless the petitioner also "show[s] that the

error had a "'substantial and injurious effect or influence'" on the outcome of his trial." *Davenport*, 596 U.S. at 126 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

### B. Unexhausted claims

Finally, "a federal court should dismiss unexhausted claims without prejudice so that the petitioner can pursue available state-court remedies." *Bland,* 459 F.3d at 1012; *see* 28 U.S.C. § 2254(b)(1)(A). "However, dismissal without prejudice for failure to exhaust state remedies is not appropriate if the state court would now find the claims procedurally barred on independent and adequate state procedural grounds." *Smallwood v. Gibson,* 191 F.3d 1257, 1267 (10th Cir. 1999) (citing *Coleman v. Thompson,* 501 U.S. 722, 735 n.1 (1991)). "Where the relevant state courts 'would now find those claims procedurally barred, there is a procedural default for the purposes of federal habeas review.'" *Grant v. Royal,* 886 F.3d at 874, 892 (10th Cir. 2018) (quoting *Bland,* 459 F.3d at 1012). "A petitioner may overcome the procedural bar only if he can 'demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Id.* (quoting *Coleman,* 501 U.S. at 750).

Applying these legal standards, the court turns to Johnson's claims.

### II. Ground I:  Jurisdiction claim

For his first basis of relief, Johnson alleges, "district court lacking jurisdiction to try and convict movant should be held retroactive." Dkt. 1 at 3. Johnson argues that both he and H.J. are members of the Choctaw Nation, and *McGirt v. Oklahoma,* 591 U.S. 894 (2020), should apply retroactively to his criminal proceeding. *Id.* Johnson presented this claim in his October 21, 2020, application for post-conviction relief. Dkt. 19-6. On June 17, 2021, the district court stayed the disposition of Johnson's post-conviction application pending the outcome of two cases before the

Oklahoma Court of Criminal Appeals regarding the application of *McGirt*. Dkt. 19-21.[2] After the

*Wallace* decision, the district court denied Johnson's application for post-conviction relief. Dkt.

19-23 at 2. Johnson advanced the same claim when he appealed the denial of his application for

post-conviction relief on March 24, 2022. Dkt. 19-24 at 5. The OCCA rejected the claim

reasoning:

> The Honorable Marion D. Fry, Associate District Judge, denied Petitioner's claim
> that the State of Oklahoma did not have jurisdiction to prosecute Petitioner under
> *McGirt*. We agree. In *State ex rel. Matloff v. Wallace*, 2021 OK CR 21, 497 P.3d
> 686, *cert. denied*, 142 S. Ct. 757 (2022), this Court determined that the United
> States Supreme Court decision in *McGirt*, because it is a new procedural rule, is
> not retroactive and does not void final state convictions. *See Matloff*, 2021 OK CR
> 21, ¶¶ 27-28, 40, 497 P.3d at 691-92, 694. The conviction in this matter was final
> before the July 9, 2020, decision in *McGirt*, and the United States Supreme Court's
> holding in *McGirt* does not apply.

Dkt. 19-25 at 1-2. Now, Johnson presents the claim to this court. Johnson argues, "*McGirt* did

not create a new procedural rule[.]" Dkt. 1 at 4.

### A. Clearly established federal law

Under the Major Crimes Act ("MCA"), only the federal government has jurisdiction to

prosecute certain crimes, including sexual abuse of a minor, that are committed by Indians within

"Indian country." 18 U.S.C. § 1153(a); *see McGirt*, 591 U.S. at 932 ("[T]he MCA applies to

Oklahoma according to its usual terms: Only the federal government, not the State, may prosecute

Indians for major crimes committed in Indian country."); *id.* at 934 ("When Congress adopted the

MCA, it broke many treaty promises that had once allowed tribes like the Creeks to try their own

members. But, in return, Congress allowed only the federal government, not the States, to try tribal

---

[2] The two cases were *State ex rel. District Attorney Matloff v. Wallace*, 497 P.3d 686 (Okla. Crim.
App. 2021) ("*Wallace*") and *Bosse v. State,* 499 P.3d 771 (Okla. Crim. App. 2021). As discussed
in more detail below, the OCCA ultimately held *McGirt* did not apply retroactively. *Wallace*, 497
P.3d at 694.

members for major crimes."); *see also* 18 U.S.C. § 1151 (defining "Indian country"); *United States v. Hatley*, 153 F.4th 1112, 1123 (10th Cir. 2025) (quoting the plain language of the MCA and stating "§ 1153 confers exclusive federal jurisdiction over '[a]ny *Indian who commits* against the person or property of another Indian or other person' any of the offenses enumerated in the statute" (emphasis in original)).

Because the relevant federal statutes do not define the term "Indian," federal courts apply a two-part test to determine if a criminal defendant is Indian. That test requires a court to "make factual findings that the defendant '(1) has some Indian blood; and (2) is recognized as an Indian by a tribe or by the federal government.'" *United States v. Prentiss*, 273 F.3d 1277, 1280 (10th Cir. 2001) (quoting *Scrivner v. Tansy*, 68 F.3d 1234, 1241 (10th Cir. 1995)). In *Hatley*, the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") held, as a matter of first impression in this circuit, that, "when proving a defendant's Indian status, the government can only satisfy the second prong of the *Prentiss II* test by proving beyond a reasonable doubt that the defendant was recognized as an Indian at the time of the charged offense." *Hatley*, 143 F.4th at 1123; *accord United States v. Zepeda*, 792 F.3d 1103, 1113 (9th Cir. 2015) (*en banc*) (holding that "the government must prove that the defendant was an Indian at the time of the offense with which the defendant is charged" to establish Indian status for purposes of federal prosecution under the MCA).

In this circuit, "[t]he issue of whether the state court properly exercised jurisdiction" over an Indian who committed major crimes in Indian country is "an important federal constitutional question" and the "[a]bsence of jurisdiction in the convicting court is . . . a basis for federal habeas

10

corpus relief cognizable under the due process clause." *Yellowbear v. Wyo. Atty. Gen.*, 525 F.3d 921, 924 (10th Cir. 2008) (citing Supreme Court precedent).[3]

## B. The *McGirt* decision and its progeny

In July 2020, the Supreme Court issued decisions in *McGirt*. In *McGirt*, an Oklahoma prisoner petitioned the Supreme Court for a writ of certiorari to review the OCCA's decision denying his application for postconviction relief. *See McGirt v. Oklahoma*, 589 U.S. 1119 (2019) (granting petition for writ of certiorari). The prisoner in *McGirt* claimed that because he is an Indian, the federal government should have prosecuted him for major crimes he committed within the boundaries of the Muscogee (Creek) Nation Reservation. *McGirt*, 591 U.S. at 898. The question presented in *McGirt* was whether the land promised to the Muscogee (Creek) Nation through treaties signed by the United States in 1832 and 1833 "remains an Indian reservation for purposes of federal criminal law." 591 U.S. at 897. The *McGirt* Court held that because Congress did not disestablish the Muscogee (Creek) Nation Reservation the land within the boundaries of that reservation is "Indian country," as defined in 18 U.S.C. § 1151(a), and, as a result, the federal government has exclusive jurisdiction, under the MCA, to prosecute certain crimes committed by Indians within those boundaries. *McGirt*, 591 U.S. at 913, 933-34. The *McGirt* Court recognized that its decision might "risk[] upsetting some convictions" because Oklahoma had been prosecuting Indians for crimes committed in Indian country since statehood, despite the "plain terms" of the MCA. 591 U.S. at 924-34. But the *McGirt* Court reasoned that "[o]ther defendants

---

[3] Respondent urges the court to deny relief on Johnson's Ground I, in part, because: (1) "no Supreme Court law clearly establishes that federal prosecutorial authority under the MCA . . . is exclusive of state authority" and (2) "no Supreme Court law clearly establishes that a state prosecution in violation of the MCA . . . is redressable on habeas review." Dkt. 19 at 30-53. Based on the court's foregoing discussion of clearly established federal law, the court rejects these arguments.

who do try to challenge their state convictions may face significant procedural obstacles, thanks to well-known state and federal limitations on postconviction review in criminal proceedings." *Id.* at 932-33.

Subsequently, in *Wallace*, the OCCA "exercise[ed] [its] independent state law authority to interpret the remedial scope of the state post-conviction statutes" and held that the Supreme Court's decision in *McGirt* "announced a new rule of criminal procedure" and does not "apply retroactively in a state post-conviction proceeding to void a final conviction." *Wallace*, 497 P.3d at 688-89, 694. The *Wallace* decision discussed federal law in reaching its decision regarding non-retroactive application of *McGirt* in state postconviction proceedings, but clearly expressed that its ultimate decision on that issue rests on independent state law grounds. *Id.* Under Supreme Court precedent, that clear expression is sufficient to establish that the OCCA's *Wallace* decision rests on an independent and adequate state procedural rule. *See Michigan v. Long*, 463 U.S. 1032, 1041 (1983) ("If a state court chooses merely to rely on federal precedents as it would on the precedents of all other jurisdictions, then it need only make clear by a plain statement in its judgment or opinion that the federal cases are being used only for the purpose of guidance, and do not themselves compel the result that the court has reached.").

### C.  Analysis

Respondent urges the Court to deny relief on this claim, in part, because the OCCA's decision is based on an independent and adequate state procedural rule, namely the *Wallace* rule,

and Johnson has not made the showings necessary to overcome the procedural default of this claim. Dkt. 19 at 55-89.[4]  The Court agrees.

As previously discussed, when a state court denies a federal claim based on an independent and adequate state procedural rule, the prisoner has procedurally defaulted that claim for purposes of federal habeas review.  *Davila*, 582 U.S. at 527; *Coleman*, 501 U.S. at 732.  When "the state pleads the affirmative defense of an independent and adequate state procedural bar, the burden to place that defense in issue shifts to the petitioner."  *Hooks v. Ward*, 184 F.3d 1206, 1217 (10th Cir. 1999).  A state procedural rule is adequate if the rule is "firmly established and regularly followed." *Beard v. Kindler*, 558 U.S. 53, 60 (2009) (quoting *Lee v. Kemna*, 534 U.S. 362, 376 (2002)).  And a state procedural rule is independent if the rule relies on state law, rather than federal law.  *Simpson v. Carpenter*, 912 F.3d 542, 571 (10th Cir. 2018).  "[A]t a minimum," the petitioner must come forward with "specific allegations . . . as to the inadequacy of the state procedure" and "[t]he scope of the state's burden of proof thereafter will be measured by the specific claims of inadequacy put forth by the petitioner."  *Id.*

Generally, Johnson objects to the holding of *Wallace*, its application to his case, and views *Wallace* as wrongly decided.  Dkt. 1 at 3-4; *see also* Dkts. 23 and 31.  More specifically, Johnson contends "*McGirt* is a substantive Constitutional rule because it places certain kinds of primary, private individual conduct beyond the power of the criminal law making authority to proscribe." Dkt. 1 at 4.  Johnson maintains "McGirt did not create a new procedural rule" and "the state does not have concurrent jurisdiction."  *Id.*

---

[4]  Alternatively, Respondent contends that § 2254(d) bars relief to the extent it states a cognizable habeas claim, and that this claim would fail on de novo review because it is barred by the non-retroactivity rule of *Teague v. Lane*, 489 U.S. 288 (1989).  Dkt. 19 at 89-130.  Because the court agrees that this claim is procedurally barred, the court declines to address these alternative arguments.

However, the question of whether *Wallace* was correctly decided is not before this court in this habeas action. Because the OCCA rejected Johnson's jurisdiction claim based on a procedural rule, without reaching the merits, the only questions for this Court are (1) whether the *Wallace* rule is independent of federal law; (2) whether the OCCA regularly follows it in denying postconviction relief; and (3) if so, whether Johnson has shown that he can overcome the procedural default of this claim.

Johnson's arguments do not fairly address these questions. *See* Dkts. 1, 23 and 31. In contrast, Respondent shows that the OCCA has applied the *Wallace* rule in more than 350 cases since *Wallace* was decided. Dkt. 19 at 64-79; Dkts. 19-34 and 19-35. On this record, the court finds that the *Wallace* rule is adequate because it is "firmly established and regularly followed." *Beard*, 558 U.S. at 60.

The court further finds that the *Wallace* rule is independent of federal law. The OCCA did discuss federal law in reaching its decision that it would not retroactively apply *McGirt* to in state postconviction proceedings, but the OCCA also clearly expressed that its ultimate decision on that issue rests on independent state law grounds. *Wallace*, 497 P.3d at 688-89, 694. Under Supreme Court precedent, that clear expression is sufficient to establish that the *Wallace* rule is "independent" of federal law. *See Michigan*, 463 U.S. at 1041; *Simpson*, 912 F.3d at 571.[5] In sum,

---

[5] At least two federal district judges in Oklahoma, including the undersigned, have concluded that the OCCA's *Wallace* rule is an independent and adequate procedural rule that, when applied to a federal claim challenging the state's allegedly improper exercise of criminal jurisdiction in Indian country, results in a procedural default of that federal claim. *See* Opinion and Order, *Fitzer v. Hamilton*, No. CIV-18-283-RAW-GLJ (E.D. Okla. Jan. 2, 2025), Dkt. 59; *Patterson v. Harpe*, No. 18-CV-0153-GKF-JFJ, 2025 WL 1908975, at *16 (N.D. Okla. July 10, 2025) (slip copy); *July v. Tinsley,* No. 22-CV-393-GKF-CDL, 2025 WL 2700111, at *13 (N.D. Okla. Sep. 19, 2025) (slip copy). While these cases are not binding on this court, the court finds the reasoning of *Fitzer, Patterson* and *July* persuasive.

the court finds that the OCCA applied an independent and adequate state procedural rule to deny postconviction relief on Johnson's jurisdiction claim, resulting in a procedural default of this claim.

### i.    Cause and prejudice

Because Johnson's jurisdiction claim is procedurally defaulted, the court's review of this claim is foreclosed unless Johnson can "demonstrate cause and prejudice or a fundamental miscarriage of justice." *McCracken v. Gibson*, 268 F.3d 970, 976 (10th Cir. 2001) (internal quotations omitted). The cause standard requires a petitioner to "show that some objective factor external to the defense impeded ... efforts to comply with the state procedural rules." *Carrier*, 477 U.S. at 488. As for prejudice, Johnson must show "'actual prejudice' resulting from the errors of which he complains." *United States v. Frady*, 456 U.S. 152, 168 (1982).

Respondent asserts, "[a]s to cause and prejudice … it appears that Petitioner refers ahead to his ineffective assistance of appellate counsel claims alleged within Ground Two in an attempt to show cause and prejudice[.]" Dkt. 19 at 80; *see also* Dkt. 1 at 4 ("Ground One was not presented on Direct Appeal because appellate counsel refused to when asked[.]") and Dkt. 23 at 5. In certain circumstances, counsel's ineffectiveness can constitute "cause" sufficient to excuse a state prisoner's procedural default. *Carrier*, 477 U.S. at 488-89. However, "a claim of ineffective assistance [must] be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Id*. at 489. An ineffective assistance of counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 452-53 (2000). Unless a petitioner can satisfy the "cause and prejudice" standard for the procedurally defaulted ineffective assistance of counsel claim, that claim cannot serve as cause for another procedurally defaulted claim. *Id*.; *see also Mondier v.*

*Franklin*, Case No. 04-CV-0629-CVE-FHM, 2008 WL 554995, at *11 (N.D. Okla. Feb. 27, 2008) (unpublished).[6]

As detailed below, Johnson never presented an ineffective assistance of appellate counsel claim premised upon his *McGirt*-jurisdiction claim. *See infra* at Section IV(B)(1); *see also* Dkt. 19-6 at 3, 9-26. Further, when he appealed the denial of his application for post-conviction relief, he did not present an ineffective assistance of appellate counsel claim based upon appellate counsel's failure to present a *McGirt*-jurisdiction claim. *See* Dkt. Dkt. 19-24 at 6. Therefore, Johnson cannot rely upon ineffective assistance of appellate counsel as "cause" to overcome the procedural bar applicable to the instant claim.

Johnson also states, "[t]he Supreme Court observed that cause would be established by a showing that (1) the factual basis for a claim was not reasonably available to counsel[.]" Dkt. 23 at 5. To the extent Johnson's position is that *McGirt* provides cause to excuse his procedural default, such a position is a nonstarter. The Tenth Circuit has stated in the context of the timeliness of a § 2254 petition under § 2244(d)(1)(D) that "nothing in *McGirt* can be said to reveal a new factual predicate[.]" *Ford v. Dowling*, Case No. 22-6138, 2023 WL 2641476, at *3 (10th Cir. Mar. 27, 2023) (unpublished). Further, the Supreme Court also denied Petitions for Writ of Certiorari in three cases in which the petitioners were challenging state court rulings that McGirt did not apply retroactively. *Parish v. Oklahoma*, ⸺ U.S. ⸺, 142 S. Ct. 757 (2022); *Davis v. Oklahoma*, ⸺ U.S. ⸺, 142 S. Ct. 793 (2022); Compelleebee *v. Oklahoma*, ⸺ U.S. ⸺, 142 S. Ct. 792 (2022). For these reasons, *McGirt* does not establish cause and prejudice to excuse Johnson's procedural default of this claim. *See Shirley v. Crow*, Case No. CIV-22-236-J, 2022 WL

---

[6] The Court cites all unpublished decisions herein as persuasive authority. Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

1233646, at *5 (W.D. Okla. Apr. 6, 2022) (unpublished) (holding the *McGirt* decision did not establish cause and prejudice to excuse a procedural default); *report and recommendation adopted by* 2022 WL 1232201 (W.D. Okla. Apr. 26, 2022).

### ii. Fundamental miscarriage of justice

To "demonstrate that a fundamental miscarriage of justice would occur if his claim is procedurally barred[,] . . . a criminal defendant must make a colorable showing of factual innocence." *Beavers v. Saffle*, 216 F.3d at 918, 923 (10th Cir. 2000). Successful actual innocence claims are rare due to the demanding evidentiary requirements for such claims. *McQuiggin*, 569 at 386, 401; *House v. Bell*, 547 U.S. 518, 538 (2006). "[P]risoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House*, 547 U.S. at 536-37 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). "To be credible, a claim of actual innocence requires a petitioner to present 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence— that was not presented at trial.'" *Fontenot v. Crow*, 4 F.4th 982, 1031 (10th Cir. 2021) (quoting *Schlup*, 513 U.S. at 324).

Johnson states throughout his filings that he is actually innocent. *See* Dkt. 1. The court discerns two arguments in support of his actual innocence argument. Johnson appears to argue the DNA evidence and H.J.'s false accusations undisclosed to the jury establish his actual innocence. *Id.* at 5, 7, 9.

### a. DNA evidence

Turning first to the DNA evidence, the DNA report includes a statement:

The DNA profile obtained from item 1A1_S (cutting from purple underwear – Sperm Fraction) appears to be a mixture of at least two people. The source of items

> 2 (Known buccal swabs from Leslie Kevin Johnson) and 3 (Known buccal swabs from H.J.) cannot be excluded as potential contributors to the mixture. The probability of selecting an unrelated individual at random from the population who could be a contributor to this mixture is at least one in 12.1 billion.

Dkt. 1 at 23; *see also* Dkt. 20-10 at 2. Johnson argues:

> The DNA evidence used at trial in an effort to convict Mr. Johnson is from a "*Sperm Fraction*" that was a mixture of at least two people. [Exhibit 9] The alleged victim in this case is the biological daughter of Mr. Johnson. If the sperm fraction is a mixture of at last two people, (as testified to above by the OSBI Forensic Biologist) and sperm fraction is only male, then it stands to reason that there are either two male contributors of DNA, (potentially a third party contributor) or there was not a full separation of the sample into individual fractions, and most likely from the 16 year old alleged victim. A correct analysis would exclude the Petitioner altogether.

Dkt. 1 at 7. This position fails to satisfy the actual innocence gateway because this evidence is not new. It was presented to the jury. Dkt. 20-10 at 2; *see also Fontenot*, 4 F.4th at 1031 (petitioner must present "new reliable evidence … that was not presented at trial."). Furthermore, blanket assertions that DNA testing would exonerate him are insufficient to meet the demanding evidentiary requirements of an actual innocence claim. *See Chavez v. Trani*, 534 F. App'x 799, 801 (10th Cir. 2013) (quoting *Schlup*, 513 U.S. at 324)). For these reasons, the DNA evidence does not allow Johnson to pass through the actual innocence gateway.

### b. H.J.'s false accusations

Second, concerning H.J.'s allegedly prior false accusations of sexual abuse, Johnson presents a copy of the State's Motion in Limine #1,[7] a "Sworn Statement of Raymond Johnson" dated August 8, 2020, which claims that the State prevented Raymond from sharing that the "Department of Human Service in Longview Texas" investigated and ultimately could not "prove"

---

[7] The state's motion in limine does not identify any specific evidence, only categories of evidence such as "evidence of specific instances of sexual behavior with anyone other than the defendant on the issue of whether she consented to sexual intercourse with the defendant[.]" Dkt. 1 at 14-15. Therefore, the court does not specifically address this item.

allegations H.J. made about her stepfather making "sexual advances towards her," and a single page from an undated confidential OKDHS referral involving H.J. *See* Dkt. 1 at 14-16, 19.

If the evidence is new and reliable, then the habeas court should evaluate the petitioner's claim by considering all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." *Blacklock v. Schnurr,* Case No. No. 24-3125, 2024 WL 4880569, at *5 (10th Cir. Nov. 25, 2024) (unpublished) (internal citations and quotations omitted). Assuming without deciding the evidence is new and reliable, the court cannot conclude "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House*, 547 U.S. at 536-37.

Even if the jury was made aware of H.J.'s prior allegations of sexual abuse, the jury would have learned there were two accusations of sexual abuse by H.J. that "Texas CPS" was unable to determine and "[unable to contact] as the family moved away." Dkt. 1 at 19. One accusation was "ruled out" and one accusation was "found with reason to believe." *Id.* Therefore, of the four (4) accusations of prior sexual abuse, only one was "ruled out." The court cannot conclude that had the jury been aware of these past allegations of sexual abuse, no reasonable juror would have found Johnson guilty.

Concerning Raymond's sworn statement (Dkt. 1 at 16), Raymond shares that while H.J. was living with her mother she was "uncontrollable, "sexually active," and had disclosed that her stepfather was "making sexual advances toward her on two separated occasions." *Id.* Raymond states, "there was no proof" of these allegations. *Id.* Significantly, Raymond's statement does not state or suggest that H.J.'s testimony concerning Johnson was false in anyway or recant his trial testimony. *See id.*

19

Even if the jury was aware of H.J.'s alleged history of sexual activity and accusations of prior sexual abuse, there was still ample evidence to support the jury's verdict. Johnson's DNA was found inside of H.J.'s underwear. Dkt. 20-7 at 13-15. H.J. reported the incident the day it happened to Raymond. Dkt. 20-6 at 25. Raymond testified at trial that Johnson admitted to having sex with H.J. *Id.* at 4-5. Therefore, even if the jury was allowed to consider H.J.'s past accusations of sexual abuse and sexual activity along with the scientific evidence and trial testimony, the court cannot conclude no reasonable juror would have found Johnson guilty. Therefore, Johnson cannot proceed through the actual innocence gateway based upon his purported "new evidence" of H.J.'s personal history and past allegations of sexual abuse.

Because Johnson procedurally defaulted the Ground I and has not shown any basis for this court to excuse the procedural default, habeas relief as to this claim is denied.

### III. Ground II:  Ineffective assistance of counsel

Johnson next challenges the OCCA's adjudication of his ineffective assistance of appellate counsel claim. Dkt. 1 at 5-6. As will be detailed below, Johnson raised most of these claims in his application for post-conviction relief. *See* Dkt. 19-6. In his application for post-conviction relief, Johnson raised the following instances of ineffective assistance of appellate counsel:  appellate counsel: i) failed to "raise and/or properly articulate trial counsel's ineffectiveness for failure to procure [an] expert witness;" ii) failed to "raise and/or properly articulate trial counsel's failure to rebut key witness testimony;" and iii) "omitted clear meritorious issues that [Johnson] expressed to include within his direct appeal[.]" Dkt. 19-6 at 12. Regarding the omitted, meritorious issues, Johnson identified the following:  i) trial counsel's failure to provide an offer of proof regarding excluded evidence of H.J.'s previous accusations of abuse; ii) "fraud on the court" perpetuated by the prosecutor regarding the information in the state's motion in limine; iii) trial counsel's failure

to offer a proper jury instruction regarding child sexual abuse; iv) prosecutorial misconduct; v) trial counsel's failure to strike jury members; vi) trial counsel's failure to adequately consult with defendant; vii) trial counsel's failure to adequately advise defendant; viii) trial counsel's failure to object to the introduction of the underwear as evidence; and ix) Johnson was denied due process through pretrial detention that was cruel and unusual. *Id.* at 18-26.

The state district court denied the application for post-conviction relief but did not specifically analyze Johnson's ineffective assistance of appellate counsel claim. *See* Dkt. 19-23. Johnson appealed the district court's order denying his application for post-conviction relief challenging the district court's failure to provide a "finding of fact and conclusion of law for each issue presented." Dkt. 19-24 at 5-7. The OCCA affirmed the district court's denial of Johnson's application for post-conviction relief. Dkt. 19-26.

Once again Johnson alleges, "appellate counsel omitted clear meritorious issues that Petitioner expressed to include within his direct appeal." Dkt. 1 at 5. Johnson identifies the following omitted issues:

1. Appellate counsel omitted the issue of jurisdiction;
2. Appellate counsel omitted trial counsel's failure to provide an offer of proof of the evidence excluded by the trial court's ruling on the motion in limine regarding the H.J.'s past accusations of abuse;
3. Appellate counsel omitted trial counsel's ineffectiveness in articulating trial counsel's failure to rebut DNA evidence with expert witness;
4. Appellate counsel was ineffective in articulating trial counsel's failure to investigate a medical condition that would produce a theory of defense;
5. Appellate counsel omitted issue of prosecutorial misconduct;
6. Appellate counsel omitted trial counsel's ineffectiveness when trial counsel failed to strike jury members;
7. Appellate counsel omitted trial counsel's ineffectiveness when trial counsel failed to make a specific objection to the introduction of the underwear as evidence.

Dkt. 1 at 4-6.

### A. The OCCA Decision

The Oklahoma Court of Criminal Appeals ("OCCA"), citing and applying *Strickland v. Washington*, 466 U.S. 668 (1984), found "no merit in the claim that Petitioner was denied effective assistance of appellate counsel as alleged in his post-conviction application." Dkt. 19-26 at 3.

### B. Analysis

The OCCA correctly identified the *Strickland* test.[8] *See id.*; *see also Malicoat,* 426 F.3d at 1248 (noting *Strickland* is the appropriate test to apply to an ineffective assistance of appellate counsel claim). The OCCA then determined Johnson's claims of ineffective assistance of appellate counsel presented in his application for post-conviction relief were meritless. *See* Dkt. 19-26 at 3.

Thus, for the claims properly exhausted, Johnson must establish the OCCA unreasonably applied *Strickland*. *See Upchurch v. Bruce*, 333 F.3d 1158, 1167 (10th Cir. 2003). When a habeas petitioner alleges that his appellate counsel rendered ineffective assistance by failing to raise an issue on direct appeal, the court first examines the merits of the omitted issue. *Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003). The Tenth Circuit has consistently held that "[w]hile counsel should not omit 'plainly meritorious' claims, counsel need not raise meritless issues." *Smith v. Workman*, 550 F.3d 1258, 1268 (10th Cir. 2008) (citation omitted). To prevail, a petitioner must "show an 'objectively unreasonable' decision by the appellate counsel as well as a 'reasonable probability that the omitted claim would have resulted in relief.'" *Id.* (citation omitted). The court now addresses each of the identified "omitted issues."

---

[8]    In order to prevail on an ineffective assistance of appellate counsel claim, Johnson must demonstrate that his appellate counsel's performance was deficient and that his counsel's performance prejudiced his defense. *Malicoat v. Mullin*, 426 F.3d 1241, 1248 (10th Cir. 2005); *see also Strickland,* 466 U.S. at 687.

22

### i.  Jurisdiction claim

Johnson takes the position that his appellate counsel was ineffective because he failed to raise the jurisdiction claim on direct appeal.  *See* Dkt. 1 at 5 (referencing Ground I).  Respondent addresses this issue on the merits.  *See* Dkt. 19 at 136-42.  Nevertheless, the court determines that this issue is unexhausted and procedurally barred.

In his direct appeal filed in 2018 (prior to the *McGirt* decision), the jurisdictional issue was not raised at all, as an ineffective assistance of counsel claim or as a stand-alone claim.  *See* Dkt. 19-4.  In his 2020 application for post-conviction relief, Johnson did allege that "the district court of LeFlore County lacked subject matter jurisdiction.  When an offense occurs in Indian country and both the Petitioner and the victim are Native American, Title 18 of U.S.C. 1153 provides for exclusive federal jurisdiction."  Dkt. 19-6 at 3.  Johnson did also raise an ineffective assistance of appellate counsel claim as outlined above.  *See id; see also supra* at Section IV.  However, nowhere in his application for post-conviction relief did Johnson explicitly claim his appellate counsel was ineffective for failing to raise the jurisdiction issue.  *See* Dkt. 19-6 at 3, 9-26.  When Johnson appealed the denial of his application for post-conviction relief, he reiterated the stand-alone *McGirt*-jurisdiction claim and that his appellate counsel was ineffective for failing to procure an expert witness, failing to rebut key witness testimony and omitting meritorious issues that Johnson requested be included in his direct appeal.  Dkt. 19-24 at 6.

Accordingly, Johnson did not fairly present this ineffective assistance of appellate counsel claim to the state court.  The current ineffective assistance of appellate counsel claim departs significantly from the stand-alone jurisdiction claim.  The state courts have not had a "'fair opportunity' to apply controlling legal principles to the facts bearing upon [the ineffective

23

assistance of appellate counsel] claim." *Anderson v. Harless,* 459 U.S. 4, 6 (1982). As such, this claim is not exhausted.

The court further finds that the OCCA would apply a procedural bar if Johnson were to return to state court to exhaust this claim through a second application for post-conviction relief because he could have, but did not, raise this ineffective assistance of appellate counsel claim in his application for post-conviction relief. *See Grant*, 886 F.3d at 892. Johnson does not attempt to show why this court should review his procedurally barred claim; instead he claims this claim was raised "on post-conviction." Dkt. 1 at 6. Therefore, Johnson has not overcome the procedural bar, and habeas relief as to this sub-proposition is denied.

### ii.    H.J.'s past accusations of abuse

Johnson also contends his appellate counsel was ineffective for failing to write a "motion together with an offer of proof at least fifteen (15) days prior to trial to attempt to introduce evidence that was excluded in motion in limine required under 12 O.S. § 2412(c) and failed to do so." Dkt. 1 at 5. Johnson argues "[t]he exclusion of the alleged victim's past false accusations denied Petitioner of compulsory process, and due process violating the confrontation clause by the prosecution intentionally suppressing exculpatory evidence with motion in limine[.]" *Id.*

As noted, Johnson must establish the OCCA unreasonably applied *Strickland* to this claim. *See Upchurch*, 333 F.3d at 1167. Under what is commonly known as Oklahoma's rape shield law, the prior sexual behavior of a victim of a sexual assault is generally inadmissible at the trial of the alleged perpetrator of the assault. *See* Okla. Stat. tit. 12, § 2412(A)(1)-(2). However, evidence that the alleged victim previously made "[f]alse allegations of sexual offenses" is admissible if the defendant "file[s] a written motion to offer such evidence accompanied by an offer of proof not later than fifteen (15) days before the date on which the trial in which such evidence is to be offered

24

is scheduled to begin[.]" *Id.* § 2412(B)(2), (C)(1). Such evidence of prior false allegations is admissible only as probative of the witness's truthfulness; if a defendant "cannot offer to the court facts in reasonable support of the falsity of the prior accusations, then they have no probative value for impeachment purposes and should not be allowed as a subject on cross-examination." *Woods v. State*, 657 P.2d 180, 182 (Okla. Crim. App. 1983), *overruled in part on other grounds by Beck v. State*, 824 P.2d 385, 388-89 (Okla. Crim. App. 1991); *see also Walker v. State*, 841 P.2d 1159, 1161 (Okla. Crim. App. 1992).

Here, Johnson does not have any "facts in reasonable support of the falsity of the prior accusations." *Woods*, 657 P.2d at 182. Johnson points to an Oklahoma DHS document as support for his contention that H.J. previously falsely accused others of sexual abuse. *See* Dkt. 1 at 5, 19. The document recounts Patricia Underwood's conversation with Texas CPS and states:

> Allegations of Neglect – Supervision as to [H.J.] by Lynette Puckett and Sexual Abuse as to [H.J.] by Curtis Puckett and Gage Puckett; all were Ruled Out. The case was closed on 1/29/2012. . . . allegation of Sexual Abuse by cousin Nathan Frank was ruled [unable to contact] as the family moved away; allegations of sexual abuse as to [H.J.] by her step-brother, Gage Puckett was ruled as unable to determine. All the cases were closed out on 8/5/2010. Allegations of sexual abuse as to H.J. by Gage Puckett was found with Reason to Believe. The case was closed out on 3/19/2009.

Dkt. 1 at 19. In summary, this document states a 2012 allegation of sexual abuse was ruled out, two 2010 allegations of sexual abuse were closed based on "unable to contact" and "unable to determine" and a 2009 allegation of sexual abuse was found "with reason to believe." *Id*.[9] Of the

---

[9] "[A]t the close of any investigation, CPS will make one of three possible dispositions: 1) 'ruled out,' meaning there is no evidence indicating abuse or neglect, 2) 'unable to determine,' meaning there is some evidence suggesting 'something happened' but not enough to say it absolutely happened, and 3) 'reason to believe,' which [means the CPS caseworker has] 'everything [she] need[a] to make me feel like there is a reason for me to believe that [an assault] happened.'" *Richardson v. State,* No. 07-98- 0125-CR, 1998 WL 907006 (Tex. App.-Amarillo, Dec. 30, 1998) (unpublished).

four allegations, only one was definitely "ruled out." This one statement, without more, does not

amount to "facts in reasonable support of the falsity of the prior accusations." *Woods*, 657 P.2d at

182; *see also Davis v. Braynt*, Case No. CIV-15-513-M, 2017 WL 8233900, at *7 (W.D. Okla.

Aug. 25, 2017) (unpublished). Thus, Johnson failed to demonstrate the OCCA's adjudication of

this ineffective assistance of appellate counsel claim was unreasonable. Habeas relief as to this

sub-proposition is denied.

### iii.   Trial counsel's failure to rebut DNA evidence with expert witness

Next, Johnson alleges his appellate counsel was ineffective for raising trial counsel's

ineffectiveness in "articulating trial counsel's failure to rebut DNA evidence with expert witness."

Dkt. 1 at 5. Johnson directs the court to his Ground III claim and states, "[t]he DNA evidence used

at trial to convict Mr. Johnson was presented in an incomplete manner, and actually shows that Mr.

Johnson would be EXCLUDED as a contributor of DNA." *Id.*

The court cannot conclude appellate counsel performed deficiently by failing to raise this

issue or that his appeal would have been decided differently had it been raised. First, the testimony

at trial regarding the DNA evidence was strong. Christensen testified:

> For the sperm fraction, the DNA profile obtained from the cutting of the purple
> underwear from the sperm fraction is a mixture of at least two individuals, or two
> people. The source of the known buccal swabs from Leslie Kevin Johnson and
> known buccal swabs from H.J. could not be excluded as a potential contributor to
> this mixture. The probability of selecting an unrelated individual at random from
> the population who could be a contributor to this mixture is at least 1 and 12.1
> billion.

Dkt. 20-7 at 14. Christensen also testified he did not find any DNA markers that appeared to

belong to a third party. *Id.* at 15. Furthermore, Raymond testified that Johnson admitted to having

sex with H.J., just not raping her. Dkt. 20-6 at 4. H.J. testified Johnson's penis penetrated her

vagina and she was wearing purple underwear at the time of the incident. *Id.* at 21, 37. Finally, on direct examination, Johnson testified:

> Q: Okay. There – the DNA?
> A: Yeah.
> Q: Do you have an explanation for that?
> A: No, I don't besides maybe something did happen.

Dkt. 20-8 at 5. All of the testimony at trial coupled with the DNA analysis itself supports the conclusion that it was in fact Johnson's DNA in H.J.'s underwear. Accordingly, the court cannot conclude Johnson's appellate counsel was ineffective for failing to raise this meritless issue. Nor can Johnson demonstrate the OCCA's adjudication of this ineffective assistance of appellate counsel claim was unreasonable. Habeas relief as to this sub-proposition is denied.

### iv.    Defense theory

Another instance of ineffective assistance of appellate counsel raised by Johnson is that his appellate counsel "was ineffective in articulating trial counsel's failure to investigate a medical condition that would produce a theory of defense." Dkt. 1 at 5. Johnson alleges he was in an "unconscious state" and "not responsible for his alleged act." *Id.* Johnson notes he has a long history of sleepwalking, has been diagnosed with sleepwalking disorder which could precipitate sexsomnia, an officially recognized sleep disorder. *Id.* at 6. Johnson acknowledges his appellate counsel raised "automatism" on direct appeal but did so "without prima facie evidence to support it[.]" *Id.* Johnson reasons, "if defendant was in unconscious state, he was not responsible for his act, and therefore, Trial Counsel's failure to request an expert witness deprived Petitioner of the constitutional right to provide a defense, Appellate Counsel should have presented this meritorious issue on Direct Appeal and failure to present this claim resulted in prejudice when it was omitted." *Id.* at 6.

27

In his application for post-conviction relief, Johnson asserted that his appellate counsel was ineffective "in articulating trial counsel's failure to investigate a medical condition that would produce a theory of defense." Dkt. 19-6 at 13. The OCCA, applying *Strickland*, found "no merit in the claim that Petitioner was denied effective assistance of appellate counsel as alleged in his post-conviction application." Dkt. 19-25 at 3.

The court understands Johnson's position to be that while his appellate counsel raised this issue, he failed to adequately support the claim with prima facie evidence beyond Johnson's self-serving testimony. Considering the jury was presented with Johnson's testimony that he had a dream, does not know what happened and has a history of sleepwalking (Dkt. 20-7 at 38, 42-43 and Dkt. 20-8 at 3) and still convicted him, the court cannot conclude there is a reasonable probability that had appellate counsel supported this claim with an expert witness it would have resulted in relief. It cannot be said that the OCCA's rejection of the claim was unreasonable. Habeas relief as to this sub-proposition is denied.

### v. Prosecutorial Misconduct

Johnson also contends his appellate counsel was ineffective for failing to raise the issue of prosecutorial misconduct. Dkt. 1 at 6. Johnson alleges, "[t]he Assistant District Attorney *intentionally* suppressed exculpatory evidence, threatened a witness, and made improper statements." *Id.* (emphasis in original). Respondent argues this proposition is not exhausted because this specific claim was not included in Johnson's petition in error challenging the state district court's denial of his application for post-conviction relief. Dkt. 19 at 155-56.

Johnson did allege in his petition in error that his appellate counsel "omitted clear meritorious issues that petitioner expressed to include within his direct appeal." Dkt. 19-24 at 5. And prosecutorial misconduct was one of the omitted issues identified in the application for post-

conviction relief.  *See* Dkt. 19-6 at 23.  On appeal, the OCCA noted, "[w]e find no merit in the

claim that Petitioner was denied effective assistance of appellate counsel ***as alleged in his post-***

***conviction application***."  Dkt. 19-25 at 3 (emphasis added).  Accordingly, the court disagrees with

Respondent regarding exhaustion of this claim.  When adjudicating Johnson's petition in error, the

OCCA clearly considered all the claims of ineffective assistance of appellate counsel Johnson

presented in his application for post-conviction relief.

### a.  Suppression of exculpatory evidence and threatening a witness

Nevertheless, under the AEDPA, Johnson bears the burden of establishing his entitlement

to relief, and with respect to ineffectiveness claims, this burden is increased.  *See Clark v. Sweeney*,

Case No. 25–52, 607 U.S. –, 2025 WL 3260170, at *2 (U.S. Nov. 24, 2025) ("When assessing a

*Strickland* claim that a state court has already adjudicated, the analysis is doubly deferential."

(internal quotations and citations omitted)).  Here, Johnson's claims of prosecutorial misconduct

in the form of suppressing exculpatory evidence and threatening a witness are not adequately

developed.  "Generalized allegations are insufficient to establish a violation of a constitutional

right."  *Richie v. Sirmons*, 563 F. Supp. 2d 1250, 1314 (N.D. Okla. 2008) (citing *Femedeer v. Haun,*

227 F.3d 1244, 1255 (10th Cir. 2000) (citing *United States v. Zannino,* 895 F.2d 1, 17 (1st

Cir.1990), for the proposition that "issues adverted to in a perfunctory manner, unaccompanied by

some effort at developed argumentation, are deemed waived")).  Accordingly, habeas relief as to

this sub-proposition is denied.

### b.  Inflammatory statements

Concerning Johnson's claim of ineffective assistance of appellate counsel premised upon

the prosecutor's inflammatory statements, Johnson identifies various statements made by the

prosecutor throughout trial.  *See* Dkt. 1 at 6.  Johnson identifies one statement made by the

prosecutor which was made outside the presence of the jury regarding jury instructions.  *Compare* Dkt. 1 at 6 (identifying "Tr II 7 L. 6-18") *with* Dkt. 20-4 at 7.  Johnson also cites the prosecutor's reading of the charge in the Information to the jury.  *Compare* Dkt. 1 at 6 (identifying "Tr II 15 L. 1-5") *with* Dkt. 20-4 at 14-15.  Neither of these statements "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).  Therefore, appellate counsel was not ineffective for failing to raise these statements as prosecutorial misconduct on direct appeal.

Johnson also takes issue with the prosecutor's remark during opening argument that after the incident, "[H.J.] didn't know what to do.  It's early in the morning.  She's at home with a rapist, in her mind, and his wife."  Dkt. 20-4 at 16; *see also* Dkt. 1 at 6.  Johnson also challenges the following statements made during closing arguments:  "Either way you look at it, either it's incest or it's forcible rape.  Either way, it's what happened" (Dkt. 20-8 at 28) and "The fact of the matter is, ladies and gentlemen, the evidence is overwhelming that Kevin Johnson willfully engaged in rape, quite frankly, and incest, with a child under the age of 18" (Dkt. 20-9 at 4).

Generally, the court will reverse a state conviction only if prosecutorial remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly,* 416 U.S. at 643.  "Inquiry into fundamental fairness requires examination of the entire proceedings, including the strength of the evidence against the petitioner[.]" *Le v. Mullin,* 311 F.3d 1002, 1013 (10th Cir. 2002).  Counsel's failure to object to the comments, while not dispositive, is also relevant.  *Id.* (citing *Trice v. Ward,* 196 F.3d 1151, 1167 (10th Cir. 1999)).  "[I]t is not enough that the prosecutor's remarks were undesirable or even universally condemned."  *Id.* (quoting *Darden v. Wainwright,* 477 U.S. 168, 181 (1986)).  Ultimately, the court considers the jury's ability

to judge the evidence fairly in light of the prosecutor's conduct.  *Id.* (citing *Tillman v. Cook,* 215 F.3d 1116, 1129 (10th Cir. 2000)).

Here, Johnson was on trial for one charge of child sexual abuse.  Dkt. 20-12 at 88.  The elements of this crime are:  i) a person willfully engaged in; ii) rape or incest; and iii) of or with a child under the age of eighteen.  *Id.* at 65.  Therefore, the prosecutor's remarks related to the rape of H.J. were not inflammatory but were merely a result of the charged crime.  Furthermore, nothing about the prosecutor's remarks can be categorized as inflammatory.  Johnson's appellate counsel was not ineffective for failing to raise this clearly meritless claim.  Nor can Johnson demonstrate the OCCA's adjudication of this claim was unreasonable.  Habeas relief as to this sub-proposition is denied.

### vi.    Trial counsel's failure to strike jury members

Johnson also claims his appellate counsel was ineffective for failing to strike juror one and juror three.  Johnson specifically alleges his appellate counsel was ineffective for

> omit[ting] trial counsel's ineffectiveness when trial counsel failed to strike jury members.  It was revealed in voir dire that juror #1 … had several family members and connections that would reasonably prevent her from making an impartial determination of guilt.  Juror number 1 stated that her 'niece is a jailer here' … was related to juror # 9 … she knew jurors #7, 8, & 4 … her deceased daughter had worked as a child welfare investigator for a substantial amount of time.  It was revealed that juror # 3 . . . "her dad was the sheriff."

Dkt. 1 at 6.[10]

Under the Sixth Amendment, a defendant has the right to be tried "by an impartial jury."  U.S. Const. amend. VI.  Included in that right is the right to a jury "capable and willing to decide

---

[10]    Respondent argues this claim was unexhausted for the same reasons he believed the prosecutorial misconduct ineffective assistance of appellate counsel claim was unexhausted.  *See* Dkt. 19 at 156.  For the same reasons discussed *supra* at Section IV(B)(5), the court rejects the notion that this claim is unexhausted.  *See* Dkt. 19-6 at 23.

the case solely on the evidence before it." *United States v. Cerrato-Reyes*, 176 F.3d 1253, 1259 (10th Cir. 1999) (quotations omitted), *abrogated on other grounds by United States v. Duncan*, 242 F.3d 940 (10th Cir. 2001). When a juror's bias against a defendant affects the juror's ability to impartially consider the evidence presented at trial, the defendant's due process rights are violated. *Skaggs v. Otis Elevator Co*., 164 F.3d 511, 515 (10th Cir. 1998). Actual bias is shown "by the express admission of the juror [] . . . of a state of mind prejudicial to a party's interest." *Id.* at 516-17. Implied bias is shown by a "personal connection to the parties or circumstances of the trial," or that there were "similarities between the personal experiences of the juror and the issues being litigated." *See id.* at 517; *see also Gonzales v. Thomas,* 99 F.3d 978, 987 (10th Cir. 1996) (noting that the implied bias doctrine should only be invoked in "extreme and exceptional circumstances that leave serious question whether the trial court subjected the defendant to manifestly unjust procedures resulting in a miscarriage of justice") (quotations and alterations omitted)).

Here, Johnson's position seems to be that Juror One, Ms. Najar, possessed an implied bias because her niece was a LeFlore County jailer, her deceased daughter was a child welfare investigator over ten years ago in a separate county and she knew other members of the jury. Also, Juror Three, Ms. Curnutt, possessed an implied bias because her father was the sheriff. *See* Dkt. 1 at 6; *see also* Dkt. 20-1 at 28-29 and Dkt. 20-2 at 32-35. None of the noted relations demonstrate a personal connection to the *parties* or the *circumstances* of the trial. None of these relations or connections leave serious question whether the trial court subjected Johnson to manifestly unjust procedures. Beyond the cursory summary of these jurors' relations, Johnson did not show these jurors were actually biased or that his trial counsel's failure to strike these jurors affected the outcome of his trial in anyway. *See Fuller v. Kansas*, Case No. 20-3069-JWL, 2021 WL 3737105, at *7 (D. Kan. Aug. 24, 2021) (unpublished). Nor did Johnson address the strikes his counsel did

employ or attempt to show that any of the jurors struck would have been better jurors for him.  *See id.*

Based upon the record, Johnson failed to demonstrate that the OCCA's adjudication of this ineffective assistance of appellate counsel claim was unreasonable.  Habeas relief as to this sub-proposition is denied.

### vii.  Introduction of underwear as evidence

For his final claim of ineffective assistance of appellate counsel, Johnson states,

> appellate counsel omitted trial counsel's ineffectiveness when Trial counsel failed to make specific objection.  During the trial Mr. Johnson saw the panties used to collect DNA evidence for the first time and told his lawyer to object because the panties were his wife's, and his lawyer refused, telling him it was too late and that it would not make a difference.

Dkt. 1 at 6.  Rodney Dayberry, an investigator with the District Attorney's office, testified he collected two pairs of underwear from H.J.'s luggage in the bedroom she slept in at her grandmother's house.  *See* Dkt. 20-4 at 29-33.  These were the pairs of underwear that ultimately were tested for DNA.  *See id.* at 33-34; *see also* Dkt. 20-9 at 27-32 and Dkt. 20-7 at 9.  H.J. testified she was wearing purple underwear at the time of the incident.  Dkt. 20-6 at 21, 37.  As noted above, Christensen testified he did not find any DNA markers that appeared to belong to a third party, such as Elizabeth.  Dkt. 20-7 at 15.

Thus, it would have been wholly meritless for appellate counsel to raise this issue on direct appeal as there was ample evidence in the record to support the conclusion that the underwear belonged to H.J., not Elizabeth.  As such, Johnson failed to demonstrate appellate counsel's decision to omit this issue was objectively unreasonable; nor has he demonstrated the OCCA's rejection of this claim was unreasonable.  Habeas relief as to this sub-proposition is denied.

As outlined above, after reviewing the record and the merits of the omitted claims, Johnson cannot demonstrate his appellate counsel's performance was deficient. Nor can Johnson demonstrate the result of his appeal would have been different had the omitted claims been included. Therefore, the OCCA's decision was not an unreasonable application of *Strickland* nor was it an unreasonable determination of the facts. 28 U.S.C. § 2254(d). Habeas relief as to this claim is denied.

## IV. Ground III:  Actual innocence claim

For his third claim for relief, Johnson argues "[t]here is strong DNA evidence that Petitioner is actually innocent of this crime." Dkt. 1 at 7. "[A]n assertion of actual innocence, although operating as a potential pathway for reaching otherwise defaulted constitutional claims, does not, standing alone, support the granting of the writ of habeas corpus." *LaFevers v. Gibson*, 238 F.3d 1263, 1265 n.4 (10th Cir. 2001); *see also Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."); *id.* at 401 ("Few rulings would be more disruptive of our federal system than to provide for federal habeas review of freestanding claims of actual innocence."); *Sellers v. Ward*, 135 F.3d 1333, 1338-39 (10th Cir. 1998) (discussing *Herrera*). Johnson has failed to allege a legally cognizable claim, and habeas relief premised upon a free-standing actual innocence claim is denied.

## V. Ground IV:  Sufficiency of the evidence

For his fourth ground for habeas relief, Johnson alleges, "[t]he state presented insufficient evidence to convict petitioner of child sexual abuse." Dkt. 1 at 7. Johnson's position is that the state failed to prove the alleged abuse was willful. *Id.*

### A.  The OCCA decision

Johnson presented this argument to the OCCA on direct appeal.  Dkt. 19-4 at 18-21.  The

OCCA analyzed the claim, applied *Jackson v. Virginia*, 443 U.S. 307 (1979), and concluded:

> Despite Johnson's contention that his actions were not willful because he did not
> intend to rape H.J., but rather the incident was the result of an erotic dream, the
> jury's resolution of the issue was clearly within the bounds of reason and this Court
> will not interfere with their verdict.

Dkt. 19-1 at 3.

### B.  Analysis

The Fourteenth Amendment's due process clause "protects the accused against conviction

except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with

which he is charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  When reviewing the sufficiency

of the evidence supporting a criminal conviction, "the relevant question is whether, after viewing

the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have

found the essential elements of the crime beyond a reasonable doubt."  *Jackson*, 443 U.S. at 319

(emphasis in original).  When applying the *Jackson* standard, a federal court first looks to state law

to determine the essential elements of the crime and then whether the evidence suffices to establish

each element.  *Hawes v. Pacheco*, 7 F.4th 1252, 1264 (10th Cir. 2021).  In doing so, the federal

court, like the jury, may rely on circumstantial evidence.  *See United States v. Hill*, 786 F.3d 1254,

1261 (10th Cir. 2015) (explaining the government may rely on circumstantial evidence to meet its

burden to prove guilt beyond a reasonable doubt and stating "[c]ircumstantial evidence alone may

permissibly support a jury's guilty verdict").

Notably, "*Jackson* claims face a high bar in federal habeas proceedings because they are

subject to two layers of judicial deference."  *Coleman v. Johnson*, 566 U.S. 650, 651 (2012).

> First, on direct appeal, it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. [...] And second, on habeas review, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was "objectively unreasonable."

*Id.* (internal quotations and citations omitted).

To obtain a conviction for child sexual abuse, the state had to prove Johnson: i) a person willfully engaged in; ii) rape or incest; iii) of or with a child under the age of eighteen. Dkt. 20-12; *see also* Okla. Stat. tit. 21, § 843.5(E) (2014). Applying the *Jackson* standard, the OCCA determined a rational jury could have found, beyond a reasonable doubt, that Johnson engaged in child sexual abuse. Dkt. 19-1 at 3. Thus, to prevail on his claim, Johnson must demonstrate the OCCA unreasonably applied *Jackson* to the facts of Johnson's case. *Pinholster*, 563 U.S. at 182.

Viewing the evidence in the light most favorable to the state, the court finds a rational juror, properly instructed on the law, could have found Johnson guilty, beyond a reasonable doubt, of child sexual abuse. Johnson testified he crawled into bed beside his sleeping daughter and placed his arm under her head. Dkt. 20-7 at 41. He further testified he was on top of her, and she was facedown. *Id.* at 42. H.J. testified that Johnson "yanked" her shorts off and penetrated her with two, separate body parts. Dkt. 20-6 at 20-21. And, Johnson's father, Raymond, testified based on the information he gathered about the incident he believed it to be a consensual occurrence. *Id.* at 7. This testimony taken together supports the jury's finding that Johnson willfully sexually abused H.J. Johnson has not shown the OCCA applied *Jackson* to the facts of this case in an objectively unreasonable manner, or that the OCCA based its decision on an unreasonable determination of the facts presented in state court. Habeas relied as to this claim is denied.

36

## VI. Ground V:  Cumulative error

Finally, Johnson alleges "[t]he cumulative effect of all these errors deprived petitioner of a fair and impartial proceeding."  Dkt. 1 at 8.  Johnson states "several disturbing errors" deprived him of a fair and impartial proceeding.  *See id.*  Johnson identifies the following errors:

- The DNA evidence used at trial to convict Mr. Johnson was presented in an incomplete manner, and actually shows that Mr. Johnson would be EXCLUDED as a contributor of DNA.
- The panties used to collect DNA evidence did not even belong to the alleged victim, but belonged to Mr. Johnson's wife.  And they were collected outside of the investigator[']s and the Court, in McCurtain County instead of Leflore County, and were presented illegally at trial.
- The jury in Mr. Johnson's case was not allowed to make an informed decision because the alleged victim's several prior false allegations of sexual abuse by family members when she was not getting what she wanted, was actively suppressed by the Assistant District Attorney Margret S. Nicholson.
- The actual alleged crime scene was never investigated for any evidence or even visited by investigators.
- The forensic exam of H.J. showed no signs of physical trauma.
- The wife of Mr. Johnson who was present at the time of the alleged offense testified that she did not hear anything unusual or anyone in distress.
- Mr. Johnson has 0 prior felony convictions.
- Mr. Johnson scored an 11 on his PR-Sentence Investigation, which indicated a low level of risk to re-offend (supporting the fact that he was not a potential offender to begin with).

*Id.*  Johnson alleges this claim was presented on direct appeal.  *Id.*  Respondent contends this claim is unexhausted.  Dkt. 19 at 165-67.  A review of the record reveals this claim is indeed unexhausted.

Johnson did present a cumulative effect claim to the OCCA on direct appeal.  Dkt. 19-4 at 31.  However, the underlying errors he presented were that: i) the state presented insufficient evidence to convict him of child sexual abuse; ii) the trial court erred when it failed to instruct the jury regarding his post-imprisonment supervision; iii) he was prejudiced by ineffective assistance of counsel; and iv) the trial court failed to properly instruct the jury that Johnson would receive additional punishment of sex offender registration if found guilty.  *See* Dkt. 19-4.  Johnson did not

37

advance a cumulative error claim in his application for post-conviction relief or his appeal of the denial of this application for post-conviction relief. *See* Dkts. 19-6 and 19-24.

Accordingly, Johnson did not fairly present this cumulative error claim to the state court. The current cumulative error claim departs significantly from the claim presented to the OCCA on direct appeal. *Compare* Dkt. 19-4 *with* Dkt. 1 at 8. The state courts have not had a "'fair opportunity' to apply controlling legal principles to the facts bearing upon [the prosecutorial misconduct] claim." *Anderson*, 459 U.S. at 6. As such, this claim is not exhausted.

The court further finds that the OCCA would apply a procedural bar if Johnson were to return to state court to exhaust this claim through an application for post-conviction relief because he could have, but did not, raise this specific cumulative error claim on direct appeal. *See Grant*, 886 F.3d at 892. Johnson does not attempt to show why this court should review his procedurally barred claim. Dkt. 1 at 8. Therefore, Johnson has not overcome the procedural bar, and habeas relief as to this claim is denied.

## CONCLUSION

The court finds and concludes that Johnson has not made the necessary showings to obtain federal habeas relief under 28 U.S.C. § 2254. The court therefore denies the Petition as to all five claims raised therein. However, because the court concludes that reasonable jurists could debate whether Ground I states a substantial constitutional claim and could debate the court's determination that relief on that claim is barred by an adequate and independent state procedural rule, the court grants a certificate of appealability on the issue of whether the rule announced by the Oklahoma Court of Criminal Appeals in *State ex rel. Matloff v. Wallace*, 497 P.3d 686 (Okla. Crim. App. 2021), is an independent and adequate state procedural rule that bars relief as to Johnson's Ground I. 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

**IT IS THEREFORE ORDERED** that:

1. the Petition (Dkt. 1) is **denied**;

2. a certificate of appealability is **granted** on the following issue: whether the rule announced by the Oklahoma Court of Criminal Appeals in *State ex rel. Matloff v. Wallace*, 497 P.3d 686 (Okla. Crim. App. 2021), is an independent and adequate state procedural rule that bars relief as to Johnson's Ground I; and

3. a separate judgment shall be entered in this matter.

**DATED** this 12th day of December, 2025.

RONALD A. WHITE
UNITED STATES DISTRICT JUDGE

39